Next case is U2, U3, U4, U5, U6, U7, U8, U9, U10, U11, U12, U13, U14, U15, U16, U17, U18, Luminara Worldwide v. Yonkou, 2017-16-29, Ms. Pelletier. I'd like to start with the 315B issue, if I may. 315B contains no gap or ambiguity with respect to what triggers the time mark. Doesn't your position create a real opportunity for manipulation by the patent holder who could file in the district court an infringement case and dismiss it without prejudice, which they're entitled to do under Rule 41, wait a year, and file it again with the result that the accused infringer wouldn't be able to initiate an IPR? Your Honor, I think the legislative history shows that there was a balancing of interests. No, no, no, no, no, no. My question, not the legislative history, my question, doesn't that create an opportunity for abuse? It could, Your Honor, create an opportunity for abuse, but the appropriate way to address such an abuse would be to bring it to the attention of Congress and allow Congress to make the 315B as written needs to be amended in some way. As written, Your Honor, I think it reflects a balancing of the public-private as well as institutional interests that Congress took into account when coming up with the precise language that was chosen. And the precise language that I think is most important here is the fact that Congress chose to trigger the bar off of service of the complaint, not based on any downstream event in the litigation or contingency in the litigation. So knowing that service triggers the complaint. Well, how do you deal with the long line of cases that suggest that a dismissal without prejudice has the consequence as though the action were never commenced in the first place? I think the nullity line of cases depends on what purpose the nullity is. So in the case of the Graves and Bonneville decisions that I think the office has cited as support for this proposition, the question was whether it renders it a nullity for purposes of appellate jurisdiction or something else. Here, the complaint is not rendered a nullity for the purpose of service, which is the term that Congress used in 315B. Do I understand right at least the two cases of this court that use the nullity language and if not all, then most of the other cases that are cited involve at least the following factual difference and there's a question obviously whether there's a relevant difference. Our two cases and the others involve the situation where what is deemed a nullity is the filing of the piece of paper that initiates the tribunal proceeding. And if you drop that, then it just doesn't count and time may run out. We don't have that. We don't have a voluntarily dismissed IPR petition to initiate an IPR. We have a voluntarily dismissed triggering event that starts the clock. I don't recall that anybody has cited a case like that. I don't think so, Your Honor. What has been cited are cases where the legal fiction of whether it's as if the suit was never filed have either resulted in the clock not being triggered, but nothing that goes to whether service of the complaint which would serve the notice function would be negated by some later event in the course of the later proceeding. So to answer your question, I don't think there's been a case cited that sits squarely on the fact pattern that you just mentioned. Well, what we have here is, as I say, is not the withdrawal of a notice of appeal, the withdrawal of something that is required to take place within a certain period of time. It's some action that eliminates what the statute says is the clock starting event. And I don't think I've seen a case cited to us that involves nullification of a clock starting event. I agree. I don't think the office has cited a case that... I think there are cases about statute of limitations that address a clock starting event and hold that the filing of a complaint which is dismissed without prejudice doesn't have any effect on the statute of limitations. Whatever. I think a lot of this goes to the existing legal backdrop against which Congress has legislated. And what I would note, because I do understand that to be the office's position, the canon of statutory construction that Congress legislated against a particular backdrop can't be used to impose conditions or limits where the statute has clearly spoken to what those limits are. But if there were a general background legal understanding that in a situation like this, then probably that could easily be incorporated into it. I guess what I keep focusing on is whether there is such a general legal background principle for a situation like this. Your Honor, we would disagree that there's such a settled, universal, existing legal background in this situation. We explained in our brief that the cases relied upon by the office are too attenuated in terms of their fact patterns to sit squarely to inform that. And we have also cited cases, including the Flowers decision, where it's not a nullity for purposes of triggering a statutory bar. So given the diversity of fact patterns and consequences, it isn't reasonable to use these two cases as the basic backdrop against which Congress was. Besides the answer that you gave to Judge Dyke's question about the possibility of abuse, the answer, go to Congress, is there any other comfort that you can offer about that? One comfort, perhaps, would be that there isn't a record here from the office or otherwise based on investigation that would tend to show that these types of abuses are either prevalent or a major policy concern. At this point, they remain on the record we have here to be hypothetical. In this case, the voluntary dismissal didn't occur, as I understand it, until the one-year period had actually run. That's correct. Between early December of 2012 to slightly more than a year, December 2013. Do you think that makes any difference? And by that time, presumably, whatever congressional purpose of making sure that the defendant understood what you were really claiming and therefore could shape an appropriate IPR petition, one year had elapsed and presumably that had been satisfied. Does that matter to this at all? I don't think it necessarily governs the statutory interpretation of the text itself, but as background to this case, that's correct, Your Honor. The district court litigation had been pending for over a year before the petitioner turned around and decided to exercise the IPR option. No, no, no, no. I think it was three years. They didn't do the IPR until 2015. Right, right. My point is there was service, and I'm going to make these up. December 5, 2012. Voluntary dismissal was until December 15, 2013. More than a year. The one-year clock of 315B had run. That's right. Does it matter for purposes of deciding this case whether the one-year clock had run? I think it's important to ensure that the letter of the statute had been satisfied, and in this case there's no dispute of fact that the petitioner, Leone, was served effectively and properly with a complaint alleging infringement over two years before deciding and filing its petition for inter-parties review. So I think what is important is that there's no dispute in this case that the letter of 315B was satisfied. Counsel, before your time runs, why don't you talk about the obviousness issue? The merits, Your Honor? The merits. I'll turn to the merits. I'll spend about a minute or two just going over them briefly. Regarding Claim 4 of the 319 patent, the hourglass shape pendulum is functional. It's not a mere design choice, and even if it was, the Board's aesthetic rationale for modifying the base reference is unsupported and makes no sense. It's not a big difference, the hourglass shape, from the prior act. But it is a difference, Your Honor, and it would require – Is it functional? It certainly is functional, Your Honor. The specification describes that the purpose of the shape is to control air resistance that would otherwise damp the motion of the pendulum. So it is decidedly functional, Your Honor. And so to go from one shape in the prior art to a shape that's not in the prior art for functional reasons would not be a design choice. Regarding Claim 14 of the 166 patent, this dependent claim requires more than a fitted hole support, having only a single axis of rotation. As distinct from the independent Claim 13, this requires an enlarged hole, having a loose suspension, and that allows for additional types of motion, including non-rotational motion. And then finally, with respect to Claim 34 of the 869 patent, the petitioner, Leon, never specified in its petition that the proposed combination was to remove the entire gimbal, and quite the opposite. Leon relied on the gimbal to teach an element in the very same claim, and that's element number C at Appendix 1424. Failure to specify how the prior art is being modified is a basic legal deficiency. The argument is not waived. Luminar raised it in its patent owner response. Leon replied to it in its petitioner reply, and the Board decided that issue incorrectly in its final written decision at Appendix 144, footnote 9. I see I'm into my rebuttal. I'd like to preserve it if I can. I will save it for you. Your cell phone. May it please the Court. In instituting Interparties' review of the 319 patent, the PTAB followed the approach of the courts that dismissal without prejudice leaves the parties in the situation they had been in had the complaint never been served. Can I ask you, I think you understood from listening to my questions before, the cases that we decided, and at least the other ones cited, there were a few that I think are completely irrelevant, but they're all about the dismissal of the filing of the piece of paper that initiates the proceeding that is then later attempted to be re-initiated where the filing of the piece of paper has to be within a clock, and the standard rule is you just ignore that in deciding whether the later filing comes within the time. We don't have that. We don't have a voluntarily withdrawn IPR petition. We have a voluntary act that the issue is, does it eliminate the clock starting event? And I guess my question is, do you have any cases that involve that? I haven't seen any. So the cases that were cited, the cases that we cited, were about the, like you said, the tolling of a statute of limitations, but they more broadly say that it renders that whole proceeding a nullity, and there are other cases. We cited one that talks about things that happened in that proceeding, like I think in that case it was a waiver of sovereign immunity. That was another case. Jury trial right. What's that? Jury trial right, I think. No? I forget, but I know it involved sovereign immunity waiver by the government, and so the court held that what happened in that proceeding doesn't carry over, and there are other cases from other circuit courts that talk about, for example, issue preclusion can't apply because nothing happened. There was no. Right, but that seems to me, again, a different kind of context because the question is what does without prejudice mean, and without prejudice is connected to matters of preclusion. Right. I'm not sure how you get out of Rule 41 the idea that for purposes of a statute that says the following event starts a clock for you to do something, that event has occurred or has not occurred, but I don't see how Rule 41 erases the event for purposes of starting the clock logically, and that's not what's happening in the, as you say, the cases that involve something different that used language that may be broader than what they involve. Well, the statute of limitations is not dissimilar from that where the starting of the clock is the event that happened, and then the clock stops when the initial complaint is filed, and then that is dismissed without prejudice, that the clock then is considered to have been going the entire time, and so it still. Because the starting event has not altered. The starting event, right, because the case that was filed that was dismissed without prejudice has no effect, and so it's about that case having no effect, and that's where the only exceptions that Luminaris pointed to, and I point out that some of the cases that Luminaris cites don't involve dismissal without prejudice. The only ones that involve dismissal without prejudice are either the situation where the particular statute or rule at issue explicitly talks about dismissal without prejudice or where it's the court reopening the case itself to, for example, deal with Rule 11 sanctions or something that happened in that particular case, and that is very dissimilar from any of these clock-starting type cases, including the statutes of limitation and including a case like this, which I agree is not identical. The statute of limitations cases are not clock-starting cases. They are clock-stopping cases. Well, but they're still about whether that case has any effect for the purposes of the clock, and so that's where there is this background principle, and we haven't found any cases either that involve clock-starting precisely like this, but that doesn't mean that the principle isn't broader than just... Why? And then I'll stop. I mean, you have quite extraordinarily plain and unambiguous statutory language. It seems to me to overcome that, you need to be able to point to a reasonably strong on-point legal background to say this is like that, and therefore you really ought to depart from the statutory language, and I guess I'm having trouble seeing the strength of that background when there doesn't seem to be cited a situation that really maps onto this, just some broader language from different situations. Well, it's broader language that has been echoed by nearly all of the courts of appeals, so it's broad in one form of its scope, and the language is broad, and it is still about whether there is an effect to the earlier case that was filed or what happened in that earlier case, including whether there was service of process, including whether there was a waiver of sovereign immunity, or there was another one involving the legal relationships between the parties for prevailing party purposes. I wonder if this situation has anything to do with the purpose of the one-year bar, because typically a dismissal without prejudice occurs very early in the case, and indeed under Rule 41 you only have a right to dismiss without prejudice before the answer is filed, and I would have thought that the purpose of the one-year bar was to say that in situations where a lot of effort and energy and money had been expended in the original case before the IPR petition was filed, that we're not going to allow people to file the IPR when there's been such an investment in the district court case. That seems a rather unlikely scenario, a dismissal without prejudice, doesn't it? I think that's exactly right, that the purpose of the one-year bar is to make the accused infringer at some point along the way, after they know the lay of the land, pick a venue, and it's either in the district court to challenge the validity or in the IPR proceeding. And I fully agree with you, Judge Dyke, in the questions you were asking earlier about there's certainly room for gamesmanship if the rule is the opposite, where the patentee can go out and sue many possible infringers, drop all of those suits so nobody has to spend any money, and then start everybody's clock. And then once they're back in the position, as any other member of the public would be, they now have this clock running that nobody else has running. And that seems like a very viable way to game the system under the opposite interpretation. Ms. Silvan, let's get to obviousness. Looking at Claim 4, recites hourglass, and Schnuckel does not disclose an hourglass. Well, Your Honor, it recites an hourglass, particularly with a wider top and bottom and narrower middle. And Schnuckel does have a wider top and bottom and narrower middle. But to the extent that it requires tapering, as Luminara argues, that certainly would be an obvious design choice. And there's no question that the shape of an hourglass was known. And there's nothing also to show, so Luminara argues that it affects the air resistance. There's nothing about how it affects the air resistance. All that the specification says is... You don't have to know the mechanism. It is different. Well, it may... The opposing counsel has said it's functional. It makes a difference. Well, there's a chance that it affects the air resistance differently depending on whether the shape is tapered or not. But there's certainly nothing to indicate how that would be or why that would be. Was there any evidence about that in the record? No, there is no evidence about that in the record. And all that the patent specification says is that an irregular shape affects the air resistance beneficially. And so any irregular shape, including an hourglass or some other irregular shape, could be said to affect the air resistance beneficially. But there's just nothing that makes this particular shape that's drawn in one drawing limiting or the only one that can have this beneficial effect. I'm happy to talk about it. Can I ask you a question back on 315? Does it or could it matter that in this case, unlike probably, as Judge Sykes says, the normal 41A voluntary dismissal, that more than a year elapsed and presumably some serious work was done in the litigation before the voluntary dismissal of the stipulation? It doesn't matter because the way the statute is written, the board is looking at the situation at the moment it is deciding whether or not to institute. And at that moment, the board knows whether or not a complaint has been dismissed without prejudice or not. So sort of what happened before, if that proceeding has now been effectively wiped out, it doesn't matter how long that proceeding was pending before. But what happened in this case in the district court before the dismissal was published? It was not a lot there. I think it was a few months, maybe two months or something, before the dismissal without prejudice. There was an amended complaint filed. No amended answer had been filed and none of the discovery deadlines or motions deadlines had even come close. So it was pending. There was a motion to dismiss for lack of jurisdiction. I forget the... In July of 2013. In July of 2013. I forget the precise... A couple of answers and a couple of amended complaints. There were. And then after an amended complaint and there was still a pretty long calendar before anything substantive was due was when the dismissal happened. And it was slightly more than a year after it had been filed. But like I said, it sort of gets washed out regardless of how long it was pending because it was dismissed without prejudice and everybody is then back in the position of... So the alleged infringer is back in the position of potentially being on the hook for infringement but potentially not, just like any other member of the public who could also file an IPR petition. What do you do with one line of Supreme Court cases? This is kind of general statutory interpretation of which a recent one is the Scion decision that says when the language of the statute is quite clear we just are not going to look at broader arguments about what the purpose really must be. I mean, we think that the statute is actually clear that it includes... Because Congress legislates against the backdrop of existing case law and there is this existing case law, the statute is actually intended to include that backdrop which says that the dismissed without prejudice proceeding is null. So even if the word seems clear on its face given this backdrop, it then is interpreted in light of that. And so certainly if it were clear and there were no case law, then there's no ambiguity to decipher but it seems like here it's either clear or to the extent that there's any ambiguity it was certainly reasonable to interpret the statute that way. Thank you, counsel. Thank you. Ms. Pelletier has some rebuttal time. Thank you. Your Honor, just to pick up on what Judge Toronto just said in terms of the statute being clear, it's not reasonable to infer that Congress overlooked or simply forgot to address the effect of dismissal in 315B because if we look to the context of 315 as a whole we see that Congress expressly dealt with the effect of dismissal in 315A2C. 315A2 involves the effect of a co-pending declaratory judgment action and the automatic stay thereof. And in subsection C, Congress said the effect of dismissal will be to lift the automatic stay. So read in context, it's not reasonable to infer that Congress simply overlooked the contingency of dismissal. In the context of 315B, it spoke clearly to what would trigger the bar. And as a secondary point to that, the existing law canon can't be used to place additional conditions or exceptions on clear statutory text that would effectively allow the office to arrogate to itself the authority to conduct inter-parties review where Congress has expressly limited the availability of inter-parties review. But you don't deny the possibility of the scenario that Ms. Silfen recited of a patent owner filing, let's say against all likely challengers, suits and then voluntarily dismissing them and forcing them to go to the board with an IPR within a year even if it doesn't at that moment seem remotely worth it. Your Honor, I don't dispute that that is a possible scenario, but there are counterfactual scenarios that cut the other way against patent owners, one of which we mentioned in our brief at page 25 of our opening brief. A petition that's denied institution is time-barred under 315B because the petitioner filed more than one year after being served with a complaint in an ongoing infringement action. That suit gets dismissed, and then the petitioner is able to circumvent the statute by refiling their petition and using voluntary dismissal as a tool to turn 315B off and on. The ability to circumvent the statute cuts both ways, and Congress has balanced... Say that again. What's the problematic scenario? The problematic scenario would be that a barred petitioner where one year has already elapsed files a petition, the petition is denied, and then the suit that would have triggered the time bar is subsequently dismissed. That would allow the petitioner to treat the existing suit as a nullity and then go back and file the petition again, even though they would have been barred by statute otherwise. There are other scenarios. There's possibility for gameship, but it only underscores the fact that Congress did balance a number of interests on either sides of the equation and arrived at the language that they decided on. To go back to the merits, Judge Lori, there is evidence in the record, both in the specification that the pendulum shape is functional. That's in the specification column, which appears at Appendix 213, Column 8, lines 40 to 46, and I think there has been some discussion about it already, but air resistance is controlled using a more irregular shape, such as an hourglass shape. An hourglass shape is specifically identified as a shape that would have the functional advantage of controlling air resistance. And there is also evidence in the record from the patent owner's expert at Appendix 3,505 to 3,506 addressing why the shapes in Schnuckel would not have the same functional advantages as the claimed pendulum. And unless there are further questions. Thank you, Counsel. We'll take the case under revising.